CITY OF BROOK PARK, APPELLEE, *v.* NECAK, APPELLANT.

(No. 50177—Decided
February 24, 1986.)

*Timothy Armstrong,* assistant law
director, for appellee.

*Burt H. Sagen* and *Paul Mancino,
Jr.,* for appellant.

MARKUS, P.J. The defendant,
Stevan Necak, appeals from an order
which increased his sentence after he
had partially satisfied the court's
original sentence. We agree that the
court lacked authority to make that
modification, so we reverse and
reinstate the court's original sentence.

On January 28, 1985, defendant pled
guilty to violating a municipal ordinance
against driving under the influence of
alcohol. The court found him guilty and
requested a presentence investigation.
Eighteen days later, after receiving the
presentence report, the court sentenced
him to thirty days in jail, a $225 fine, and
costs. The court suspended twenty-
seven days of the jail term, and placed
defendant on active probation for one
year on condition that he participate in
the "counter attack" alcohol rehabilita-
tion program.

Six weeks later, the court recalled
the defendant to reconsider its previous
sentence. Apparently, the presentence
report at the original sentencing hearing
recounted a 1979 conviction in a neigh-
boring municipality. Defendant's coun-
sel reportedly denied that this conviction
involved an alcohol-related moving viola-
tion. The court later obtained records
from that municipality which gave con-
trary information.

Despite defense counsel's protest
that the defendant had already paid the
fine and "started the sentence," the
court vacated its previous sentence. It
then sentenced the defendant to sixty
days in jail, a fine of $225, and costs. The
court suspended fifty days of the jail
term and placed defendant on the same
probation terms as in the original
sentence. Thus, the new sentence in-
creased the total jail term from thirty to
sixty days, and the jail term, after
suspension, from three to ten days. The
court granted the defendant credit for
the time served on the original sentence:
"any jail time that's been served goes
toward this."

The defendant's three assignments
of error challenge the modified sentence
on grounds that it (a) subjected him to
double jeopardy, (b) resulted from in-
dependent investigations by the court,
and (c) was procedurally improper.

The Double Jeopardy Clause pro-
tects the defendant's right to finality for
an acquittal and prevents multiple
punishments for the same conviction.
*Benton* v. *Maryland* (1969), 395 U.S.
784, 795-796. The courts can increase
sentences when they do not purport to
be final. *Columbus* v. *Messer* (1982), 7
Ohio App. 3d 266, 7 OBR 347, 455 N.E.
2d 519. "* * * [A] sentence does not
have the qualities of constitutional finali-
ty that attend an acquittal." *United
States* v. *DiFrancesco* (1980), 449 U.S.
117, 134. Thus, the prosecution's appeal
from a sentencing decision may not of-
fend the Double Jeopardy Clause of the
Fifth Amendment. *Id.* The defendant
has no reasonable expectation that the
sentence is final when the legislature ex-
pressly allows appellate review to cor-
rect inappropriate sentences. *Id.*

Additionally, the courts can correct

legally improper sentences, even if they thereby impose greater penalties. Resentencing to impose an omitted mandatory penalty does not violate double jeopardy restraints. *Bozza* v. *United States* (1947), 330 U.S. 160; *State* v. *Beasley* (1984), 14 Ohio St. 3d 74, 14 OBR 511, 471 N.E. 2d 774. The legally authorized judge can resentence a defendant after an unauthorized judge purported to sentence him. *Beatty* v. *Alston* (1975), 43 Ohio St. 2d 126, 72 O.O. 2d 70, 330 N.E. 2d 921.

In this case, the trial court modified a legally proper sentence without statutory authority after defendant paid the fine and apparently served part of the jail term. The defendant's right to expect finality precluded such action. See *Columbus* v. *Messer, supra,* at 268, 7 OBR at 348-349, 455 N.E. 2d at 521-522. Misinformation from defendant's counsel did not make the original sentence unlawful. If the court could reconsider its sentence whenever it acquired new derogatory information, the defendant would have no assurance about the punishment's finality.

We express no opinion whether the court had reason to punish defendant's counsel. However, it could not do so by increasing defendant's sentence. Hence, we sustain the first assigned error.

Contrary to the defendant's second assigned error, the court did not conduct an independent fact-finding investigation which denied him due process. Cf. *State* v. *Longo* (1982), 4 Ohio App. 3d 136, 140-141, 4 OBR 228, 233-234, 446 N.E. 2d 1145, 1150-1151. It simply obtained another municipal court's public records about a conviction described in the presentence report and discussed at the sentencing hearing. The court's recollection of a prior hearing in which it participated does not constitute an improper investigation. We overrule the second claimed error.

The defendant's' final assignment correctly asserts that the court lacked procedural authority to resentence him. The trial court had no statutory authority to increase a *lawful* sentence after the defendant had served part of that sentence. We find no authority for the proposition that the court had inherent authority to do so. Indeed, Ohio courts have no authority to reconsider their own valid final judgments in criminal cases. *Cleveland Heights* v. *Richardson* (1983), 9 Ohio App. 3d 152, 9 OBR 218, 458 N.E. 2d 901.

Therefore, we vacate the trial court's new sentence and reinstate its original sentence.

*Judgment accordingly.*

PATTON and CORRIGAN, JJ., concur.