[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Journal Entry
AS THIS CASE HAS NOT BEEN JOURNALIZED, ON SUA SPONTE RECONSIDERATION OF THIS MATTER IN LIGHT OF UNITED STATES V. KENDIS (C.A.3, 1989),883 F.3d 209, THIS COURT VACATES THE JUDGMENT ENTRY DATED DECEMBER 16, 1999, AND ON RECONSIDERATION ISSUES ITS JOURNAL ENTRY AND OPINION ON SAME DATE AS THIS SUA SPONTE ORDER.
 JOURNAL ENTRY and OPINION
Defendant-appellant Ellen Burnside filed her appeal from the trial court order that revoked her probation and ordered a reduced sentence into execution. In her sole assignment of error, appellant argued the trial court's action constituted a violation of the constitutional prohibition against double jeopardy. This court, when originally considering appellant's argument, agreed with her; however, this court has the inherent authority, in the furtherance of justice, to reconsider its judgment. State ex rel. LTV SteelCo. v. Gwin (1992), 64 Ohio St.3d 245. Upon reconsideration of appellant's assignment of error, this court does not find appellant's argument persuasive; therefore, the trial court's order is affirmed.
Appellant was indicted in this case in October, 1998 with two co-defendants. Count one of the indictment charged appellant with violation of R.C. 2913.51, Receiving Stolen Property. Appellant entered a plea of not guilty to the indictment and was assigned counsel to represent her.
After a few pretrials, appellant entered into a plea agreement with the state whereby, in exchange for her plea of guilty to the charge, the prosecutor would "make a recommendation at sentencing" regarding the penalty to be imposed. At the plea hearing held on December 21, 1998 the trial court explained to appellant her rights and the penalties involved, including the fact that if appellant violated the terms of a community sanction imposed, she could be "sentenced to prison." The trial court thereafter accepted appellant's plea and remanded her for a pre-sentence investigation and report and a "T.A.S.C."[1]
The trial court called appellant's case for sentencing on the morning of January 25, 1999. In accord with the plea agreement, the prosecutor recommended appellant be placed under community control sanctions. The trial court noted for the record the long list of offenses for which appellant had been convicted and indicated it could not, "in good conscious (sic), put [her] out on the street."
Despite appellant's representation that she had found placement into a treatment plan on her own, the trial court stated for the record as follows: Appellant was placed on probation for three years; appellant would be placed in "inpatient drug treatment, ISP supervision"; appellant would have a "TASC evaluation"; upon appellant's release from the facility, appellant would maintain full-time, verifiable employment and complete twenty-five hours of community service; and, if appellant violated her sanctions, she would be sentenced to a term of incarceration of eleven months. The journal entry of sentence, filed on January 28, 1999, indicated appellant was placed under the supervision of the "adult probation department" and was "remanded to the county jail until bed is available for in-patient treatment." Appellant also was ordered to "report to the probation department."
On February 2, 1999 the trial court conducted a hearing in appellant's case, stating that appellant's probation officer had brought to the court's attention appellant's admission to the officer on the previous day that she had been sentenced on the afternoon of January 25, 1999 on another case in Akron.
The trial court stated for the record its position that in a case such as appellant's, it ordinarily would not have permitted appellant to be placed on probation but, based upon the representations of appellant and her attorney, it had done so. The court further stated that although appellant had violated none of the actual terms set forth for her probation, the trial court believed, nevertheless, it had been "mislead (sic)" as to "a material factor" in its decision regarding appellant's sentence. The trial court indicated appellant's failure to notify either her attorney or the court about the Akron offense prior to her sentencing led the court to conclude she was not a proper candidate for probation. The trial court therefore terminated appellant's probation. In ordering appellant to serve her sentence, however, the trial court reduced the term of incarceration to eight months.
Appellant filed a timely appeal from what she labels as the trial court's order of "re-sentencing." She presents a single assignment of error for review, as follows:
 ELLEN BURNSIDE WAS DEPRIVED OF HER LIBERTY WITHOUT DUE PROCESS OF LAW AND DENIED HER CONSTITUTIONAL RIGHT AGAINST DOUBLE JEOPARDY, WHEN THE TRIAL COURT RESENTENCED HER AFTER SHE HAD BEGUN SERVING HER ORIGINAL SENTENCE.
Appellant asserts the trial court's order was improper, contending that since she had been remanded to the county jail, she had begun to serve her sentence and, therefore, the trial court's action violated the constitutional prohibition against double jeopardy. Appellant's assignment of error lacks merit.
A review of the record reveals that although the trial court called its action a "re-sentencing," it actually proceeded in accordance with R.C. 2951.09. This section permits a trial court, "[w]hen a defendant is brought before the judge * * * under section 2951.08" to "immediately * * * inquire into the conduct of the defendant." That section further permits a trial court to "terminate the probation" and to impose "any sentence that originally could have been imposed." Crim.R. 32.3 outlines the procedure a trial court must follow in revoking an order of probation. Appellant argues neither that the trial court failed to conduct a probation revocation hearing nor that the trial court failed to follow proper procedure in ordering and conducting the hearing.State v. Thomason (Feb. 23, 1995), Cuyahoga App. No. 67012, unreported; cf., In re Zilba (1996), 110 Ohio App.3d 258.
Clearly, appellant's. probationary period had begun on January 25, 1999. Thomason, supra. Hence, there had been no commencement of an execution of a sentence. Appellant's initial detention was a part of the trial court's order; her placement in jail was only incidental to that portion of the probation order that mandated "in-patient treatment." Appellant also was under the jurisdiction of the probation department; thus, her probation officer had the authority under R.C. 2951.08 to notify the judge about appellant's admission concerning the Akron offense.
Probation is a privilege, not a right, and, as such, it is within a trial court's discretion to either grant or revoke probation. State v. Theisen (1957), 167 Ohio St. 119; State v.McKnight (1983), 10 Ohio App.3d 312. Thus, a trial court's decision may not be disturbed on appeal if the record contains evidence of a substantial nature justifying revocation. State v. Scott
(1982), 6 Ohio App.3d 39, 41. Relevant to this court's review of the substantial nature of the evidence presented to the trial court in this case are two Ohio Supreme Court decisions and a consideration of the theory of "fraud on the court."
In State v. Thompson (1987), 33 Ohio St.3d 1 at 7, citingState v. Deever (1980), 64 Ohio St.2d 335, the supreme court reiterated its position that probationers hold constitutional rights that are more limited than those of other people simply because probationers are considered to be in the constructive custody of the state at all times. See, also, State v. Theisen, supra; Statev. Scott, supra. This court, therefore, is required to be cognizant of that fact in addressing appellant's assignment of error. Moreover, for double jeopardy purposes, the supreme court made a distinction in State v. Draper (1991), 60 Ohio St.3d 81, between probationers who receive that status in lieu of serving any portion of a term of incarceration and those persons who are granted probation after a portion of their sentence of incarceration is served.
Brook Park v. Necak (1986), 30 Ohio App.3d 118, upon which appellant relies in her appellate brief to support her argument the trial court's order was improper, was decided prior to the aforementioned supreme court decisions. Furthermore, its facts are distinguishable since Necak had already served a portion of his term of incarceration before being placed on probation. Appellant herein, however, was detained only because the trial court's order of probation mandated she be placed in "in-patient treatment." Since the probation department had jurisdiction over appellant, she had not begun serving a term of incarceration.
This court's decision in State v. Thomason, supra, is more recent than Necak and, in addition, addressed a defendant placed immediately upon probation. Thomason is, therefore, more appropriate than Necak to the facts of this case. This court determined inThomason that a defendant who misrepresents facts during a sentencing hearing properly may be held to be an inappropriate candidate for probation.
One of the cases this court relied upon in Thomason, viz.,United States v. Kendis (3d Cir. 1989), 883 F.2d 209; moreover, directly addresses the situation faced by the trial court herein. In Kendis, the defendant, upon entry of a guilty plea to one count of bank fraud, agreed to make restitution. He made partial restitution by the time of his sentencing; thus, the district court suspended nearly all of the defendant's five-year sentence. However, when the district court subsequently was informed that the defendant's "restitution" had been made from former clients' funds the defendant had converted to his own use, the district court terminated the defendant's probation. This decision was upheld on appeal; the federal appeals court explained its rationale as follows:
 [1] On appeal Kendis contends first that the district court abused its discretion in revoking his probation on Kendis I because the offense on which the district court relied for such revocation occurred prior to his sentencing and hence while he was not on probation. We reject Kendis' argument. In United States v. Camarata, 828 F.2d 974, 977 n. 5 (3d Cir. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1036. 98 L.Ed.2d 1000 (1988), we recognized that some courts had adopted the fraud on the court exception to the general rule that revocation of probation is generally based on acts occurring after sentencing. See also United States v. Veatch, 792 F.2d 48, 51 (3d Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). We are now faced with the issue directly, and we also adopt the principle that revocation of probation is permissible when defendant's acts prior to sentencing constitute a fraud on the court.
 [2] Kendis argues, however, that his action
in using clients' converted funds to pay restitution did not constitute a fraud on the court because there was no concealment of the crime and the court was aware of the possibility
of other potential victims of Kendis' illegal activity. In this case, the record shows that Kendis relied heavily on his act of restitution to persuade the district court to give him a relatively light prison sentence in Kendis I and that Kendis failed to reveal that restitution had been made with clients' money. Revocation of probation under the fraud on the court theory was thereafter appropriate under these circumstances. See United States v. Jurgens, 626 F.2d 142, 144 (9th Cir. 1980)
(Emphasis added.)
Similarly, although it was merely a "sin of omission," appellant's affirmative failure in this case to reveal to the trial court the pending charge against her prior to being sentenced amounted to a fraud on the court.
It is appropriate to note the record does not indicate appellant was incarcerated after her December 21, 1998 plea in the Cuyahoga County Court of Common Pleas. Thus, appellant had the opportunity to commit the Akron offense, and the time to be charged and to enter a plea to that charge. Appellant could thereafter appear for her sentencing in Cleveland on the morning of January 25, 1999, neglect to immediately report to the probation department, then on the same afternoon appear for her sentencing in Akron. Someone with appellant's extensive experience with the criminal justice system must have known she was required to disclose the pending Akron case during her Cleveland sentencing hearing.
Since one of the primary statutory conditions of probation is that the probationer must "abide by the law," the trial court's decision to reconsider its grant of probation to appellant was entirely justified. R.C. 2951.02(C); State v. Shyrock (1949),86 Ohio App. 210, at headnote; State v. O'Meara (1987), 35 Ohio App.3d 95; see, also, State v. McCoy (Nov. 17, 1992), Franklin App. No. 92AP-818, unreported; United States v. Williams (6th Cir. 1994),15 F.3d 1356. Simply put, appellant's concealment of the Akron arrest was an objective manifestation "sufficient to suggest that [s]he was a poor risk to complete probation successfully." State v.Henderson (1989), 62 Ohio App.3d 848 at 854; see, also, e.g. Stateex rel. Lipschutz v. Shoemaker (1990), 49 Ohio St.3d 88. R.C.2951.09 specifically mandates a trial court "shall inquire into the conduct of the defendant" when presented with the question of whether to continue the defendant's probation.
Once appellant's probation officer had notified the trial court, pursuant to R.C. 2951.08, of appellant's admission she committed another offense of which the trial court had been unaware at the time of sentencing, the trial court was within its authority to afford appellant a hearing on the matter. To hold otherwise places an unfair burden upon trial courts to inquire in every case, prior to imposing sentence, as to the defendant's forthrightness. The result is to encourage sharp practices that have no place in the serious business of criminal justice and to undermine the respect for the trial courts.[2]
On this record, the trial court determined "the ends of justice" and "the good conduct of the defendant" did not warrant an order of probation. R.C. 2951.09. Since the trial court was within its statutory authority to revoke appellant's probation and to order a sentence of eight months into execution, its action did not violate the constitutional prohibition against double jeopardy.State v. Thomason, supra; R.C. 2929.14(A)(5); State v. McMullen
(1983), 6 Ohio St.3d 244; cf., State v. Meister (1991), 76 Ohio App.3d 15.
Accordingly, upon reconsideration, appellant's assignment of error is overruled.
Appellant's conviction and sentence are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JOHN T. PATTON, J CONCURS (See separate opinion.)
TIMOTHY E. McMONAGLE, P.J. DISSENTS (See separate opinion.)
 ________________________ JUDGE, KENNETH A. ROCCO
[1] Quotes are taken from the transcripts of the hearings held in the trial court.
[2] Clearly, that is what occurred in Necak, since the trial court discovered that Necak's attorney had made the misrepresentation; however, nothing in the facts suggested Necak had either authorized or encouraged his attorney's action.